RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

Attorneys for Chapter 11 Debtor and Plan Proponent

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# (LOS ANGELES DIVISION)

| | |
|---|---|
| In re:<br><br>TITLE GUARANTEE BUILDING OWNER, LLC, a Delaware limited liability company,<br><br>    Debtor and Debtor in Possession. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:09-bk-13950-BR<br><br>Chapter 11<br><br>**SECOND AMENDED DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**<br><br>**Plan Confirmation Hearing:**<br>Date:  [TO BE SET]<br>Time:  [TO BE SET]<br>Place:  Courtroom 1668<br>       255 E. Temple St.<br>       Los Angeles, CA |

PRINTED ON

RECYCLED PAPER

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 2

II.  SUMMARY OF THE PLAN.......................................................................... 3

   A.   What Creditors and Interest Holders Will Receive Under The Plan ................... 3

   B.   Unclassified Claims ................................................................................ 3

      1.   Administrative Expenses ................................................................. 3
      2.   Priority Tax Claims ......................................................................... 5

   C.   Classified Claims and Interests ................................................................ 5

      1.   Class of Secured Claims ................................................................. 5
      2.   Classes of Priority Unsecured Claims............................................. 7
      3.   Class of General Unsecured Claims ............................................... 8
      4.   Class of Interest Holders ................................................................ 9

   D.   Means of Effectuating the Plan................................................................. 9

      1.   Funding for the Plan....................................................................... 9
      2.   Tax Credit Agreements ................................................................. 10
      3.   Post-Confirmation Management.................................................... 12
      4.   Disbursing Agent ......................................................................... 12
      5.   Objections to Claims..................................................................... 12
      6.   Interest Pending Allowance of Claims ......................................... 13
      7.   Distributions to be Made Pursuant to the Plan............................. 13
      8.   Exculpations and Releases ........................................................... 14
      9.   Injunctions.................................................................................... 14

   E.   Risk Factors ........................................................................................ 15

   F.   Other Provisions of the Plan .................................................................. 17

      1.   Executory Contracts and Unexpired Leases ................................. 17
        a) Assumptions.......................................................................... 17
        b) Rejections.............................................................................. 17
      2.   Changes in Rates Subject to Regulatory Commission Approval........... 18
      3.   Retention of Jurisdiction .............................................................. 18

   G.   Tax Consequences of Plan .................................................................... 20

i

1

2    III.    EFFECT OF CONFIRMATION OF PLAN ................................................................. 21

3           A.    Discharge ....................................................................................................... 21
            B.    Revesting of Property in the Reorganized Debtor .......................................... 22
4           C.    Default ............................................................................................................ 23
            D.    Modification of Plan ....................................................................................... 23
5           E.    Post-Confirmation Status Report .................................................................... 23
            F.    Post-Confirmation Conversion/Dismissal ...................................................... 24
6           G.    Post-Confirmation U.S. Trustee Fees ............................................................. 24
            H.    Final Decree .................................................................................................... 25
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### STATUTES

11 U.S.C. § 101 ...................................................................................................................2

11 U.S.C. § 501 .................................................................................................................21

11 U.S.C. § 502 .................................................................................................................21

11 U.S.C. § 502(a) ............................................................................................................12

11 U.S.C. § 502(c) ............................................................................................................12

11 U.S.C. § 502(g) ............................................................................................................21

11 U.S.C. § 502(h) ............................................................................................................21

11 U.S.C. § 502(i) .............................................................................................................21

11 U.S.C. § 507(a) ..............................................................................................................8

11 U.S.C. § 507(a)(1) .........................................................................................................3

11 U.S.C. § 507(a)(3) ......................................................................................................7, 8

11 U.S.C. § 507(a)(4) ......................................................................................................7, 8

11 U.S.C. § 507(a)(5) ......................................................................................................7, 8

11 U.S.C. § 507(a)(6) ......................................................................................................7, 8

11 U.S.C. § 507(a)(7) ......................................................................................................7, 8

11 U.S.C. § 507(a)(8) .........................................................................................................5

11 U.S.C. § 524 .................................................................................................................22

11 U.S.C. § 1112(b) ..........................................................................................................24

11 U.S.C. § 1127 ...............................................................................................................19

11 U.S.C. § 1141 ...............................................................................................................22

28 U.S.C. § 1930(a)(6) ......................................................................................................24

### RULES

Bankrutpcy Rule 1009 .......................................................................................................13

Bankrutpcy Rule 3022 .......................................................................................................25

PRINTED ON

RECYCLED PAPER

# I.

## INTRODUCTION

Title Guarantee Building Owner, LLC, a Delaware limited liability company, is the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Case"). On February 23, 2009 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. Chapter 11 allows the Debtor, creditors and others parties in interest to propose a plan of reorganization. A plan of reorganization may provide for the Debtor to reorganize by continuing to operate, liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Debtor's Chapter 11 Plan of Reorganization (the "Plan").

The Plan is a plan of reorganization which has been proposed by the Debtor. The Effective Date of the Plan (the "Effective Date") will be the first business day which is at least eleven days following the date the Bankruptcy Court enters the order confirming the Plan (the "Plan Confirmation Order"), unless there is a stay in effect, in which case the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order. The Debtor, following the Effective Date, will be referred to herein as the "Reorganized Debtor."

All capitalized terms used herein which are not otherwise defined shall have the meaning given in the Disclosure Statement unless otherwise stated.

PRINTED ON

RECYCLED PAPER

## II.

## SUMMARY OF THE PLAN

**A.      What Creditors and Interest Holders Will Receive Under The Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following claims in a class:

**1.      Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Case that are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

PRINTED ON

RECYCLED PAPER

| Name | Amount Owed | Treatment |
|---|---|---|
| Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB"), Debtor's bankruptcy counsel | $100,000 (estimated, and in excess of pre-petition retainer paid in the amount of approximately $200,000) | Paid in full from contribution by Title Acquisition upon the later of (a) Effective Date; and (b) 11 days after date of entry of Order allowing the final fee application. |
| Greenberg Traurig ("GT"), Debtor's special counsel | $75,000 (estimated, could be higher based on litigation with contractor or subcontractors) | Paid in full from contribution by Title Acquisition upon the later of (a) Effective Date; and (b) 11 days after date of entry of Order allowing the final fee application. |
| Debtor's real estate appraiser | $10,000 (estimated) | Paid in full from contribution by Title Acquisition upon the later of (a) Effective Date; and (b) 11 days after date of entry of Order allowing the final fee application. |
| Debtors' accountant | $10,000 (estimated) | Paid in full from contribution by Title Acquisition upon the later of (a) Effective Date; and (b) 11 days after date of entry of Order allowing the final fee application. |
| Clerk's Office Fees | $0 (estimated) | Paid in full from contribution by Title Acquisition on the Effective Date. |
| Office of the U.S. Trustee Fees | $0 (estimated) | Paid in full from contribution by Title Acquisition on the Effective Date. |
| **TOTAL** | $195,000 (estimated) | |

<u>Court Approval of Fees Required</u>:

The Court must rule on all fees listed in this chart before the fees will be owed, except for fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-Debtor sources. The professional in question must file and serve a properly noticed fee application, and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan unless such fees are paid from equity distributions and the equity holder(s) waive the need to file fee requests. By not later than 2 business days prior to the Confirmation Hearing, Title Acquisition will deposit the sum of $200,000 with LNBRB, which shall maintain such funds in a segregated client trust account. These funds shall be used

4

PRINTED ON

RECYCLED PAPER

to pay the fees and expenses allowed by the Court.  Based on the foregoing, the Debtor submits

that the Debtor will have sufficient funds to satisfy the foregoing administrative claims.

### 2.       Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described

by Bankruptcy Code Section 507(a)(8).  The Bankruptcy Code requires that each holder of such

a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash

payments, over a period not exceeding six years from the date of the assessment of such tax.  The

Debtor does not believe that there are any priority tax claims, however two (2) priority tax claims

have been filed as follows.  These claims will be paid on the Effective Date of the Plan from the

Unsecured Creditors' Fund.

| Name | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $200.00 | Paid in full by the Reorganized Debtor from the Net Capital Contribution made by Building Lessee on the Effective Date. |
| Los Angeles County Treasurer & Tax Collector | $21,983.48 | Paid in full by the Reorganized Debtor from the Net Capital Contribution made by Building Lessee on the Effective Date. |
| Franchise Tax Board | $800.00 | Paid in full by the Reorganized Debtor from the Net Capital Contribution made by Building Lessee on the Effective Date. |
| TOTAL | $22,983.48 | |

### C.       Classified Claims and Interests

### 1.       Class of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart

lists the classes containing the Debtor's secured pre-petition claims and their treatment under the

Plan:

PRINTED ON

RECYCLED PAPER

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: Bank of America, N.A.<br><br>Collateral description = Debtor's fee simple interest in the Property<br><br>Claim Priority = First Deed of Trust, but junior to statutory tax lien of Los Angeles County Tax Collector<br><br>Collateral value = approx. $24,759,000 (if Bank does not consent to treatment of Bank's Secured Claim under the Plan or an agreement is not reached between the Debtor and the Bank regarding the treatment of Bank's Secured Claim, a new appraisal will be obtained by the Debtor which may be needed for confirmation of the Plan)<br><br>Amount of Claim = Approx. $25,203,012.64 as of May 8, 2009**<br><br>**Debtor does not agree to this claim amount. The Debtor is in the process of verifying the accuracy of the Bank's claim and reserves all rights to object. | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | On the Effective Date, the Bank shall have an allowed secured claim equal to the market value of the Property (the "Bank's Secured Claim").<br><br> The Bank's Secured Claim shall accrue interest at the rate of LIBOR plus 200 basis points from the Effective Date.<br><br> The Bank's Secured Claim shall not be amortized, and the Reorganized Debtor shall make monthly interest only payments, with the first payment due on the first business day of the second full month following the Effective Date (with such payment to cover the period from the Effective Date to the end of the first full month), and all subsequent payments due on the first business day of the month (for interest accrued during the prior month). The Bank's Secured Claim shall mature on the 5th anniversary date following the Effective Date.<br><br> Capri shall guarantee payment of all interest payable with respect to the Bank's Secured Claim, with such guarantee to be in the form attached as Exhibit "3" attached to the Disclosure Statement.<br><br> Capri shall also provide a non-recourse guarantee in the form attached as Exhibit "4" attached to the Disclosure Statement for the usual and customary exceptions, such as losses or damages suffered by the Bank with respect to any fraud, misrepresentations or reckless damage to the Property by the Reorganized Debtor, failure to pay taxes or assessments to the extent funds generated by the Property have been misapplied by the Reorganized Debtor, or misapplication of insurance or condemnation proceeds, security deposits or rents by the Reorganized Debtor.<br><br> The Reorganized Debtor shall have the right to prepay the Bank's Secured Claim at any time without penalty or fees. |

6

PRINTED ON

RECYCLED PAPER

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
|  |  |  |  | Pending satisfaction in full of the Bank's Secured Claim and all accrued, unpaid interest, the Bank shall retain its first priority deed of trust upon the Property.  In addition, the "*Agreement to Rescind Subordination of Master Lease between Bank of America, N.A. and Banc of America Historic Capital Assets LLC*" shall remain in place. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of: Los Angeles County Tax Collector ("LA County")<br><br>Collateral description = Debtor's fee simple interest in the Property<br><br>Claim Priority = Statutory tax lien, senior to the first priority deed of trust in favor of the Bank<br><br>Collateral value =  approx. $24,759,000 (new appraisal being obtained by the Debtor)<br><br>Amount of Claim = Approx. $167,063.70 | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | The Reorganized Debtor shall pay an amount equal to one-half of LA County's allowed claim on the Effective Date of the Plan from the Net Capital Contribution. Title Acquisition shall pay the remaining one-half of LA County's allowed claim by the third month of the Effective Date of the Plan. |

## 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  The Debtor is not aware of any claims that

7

PRINTED ON

RECYCLED PAPER

would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.

### 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies the Plan's treatment of the classes containing <u>all</u> of the Debtor's general unsecured claims (non-insider claims and subordinated insider claims have been separately classified):

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | <u>Claims</u>: All Allowed General Unsecured Claims, including any deficiency unsecured claim of the Bank, claims asserted by holders of mechanic's liens and all other general unsecured claims, but excluding claims of insiders (i.e., Title Acquisition).<br><br><u>Amount of Claims</u> = Approximately $444,012.64 (Bank's unsecured deficiency claim assuming claim of $25,203,012.64 and market value of Property of $24,759,000); <u>plus</u><br><br>Approximately $3.1 million (based on claims filed on or before the bar date for filing proofs of claim in this case).<br><br><u>Total</u>: Approximately $3.5 million | N | Y<br><br>(Creditors in this class are entitled to vote on the Plan) | On the Effective Date of the Plan, non-insider creditors holding allowed general unsecured claims shall receive his, her or its <u>pro rata</u> share of the sum of $1 million paid by the Reorganized Debtor from the Net Capital Contribution.<br><br>Assuming total non-insider general unsecured claims of $3.5 million, the estimated return to creditors would be approximately 30% of their allowed claims. The actual distribution could vary depending on, among other things, proofs of claim filed by creditors, and the outcome of possible objections to claims.<br><br>The bar date for filing proofs of claim in this case was August 17, 2009. <u>Exhibit "7"</u> attached to the Disclosure Statement lists all proofs of claims filed on or before the bar date by unsecured creditors, including claims asserted by holders of mechanic's liens. |

PRINTED ON

RECYCLED PAPER

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 4 | Claims: Insider General Unsecured Claim of Title Acquisition).<br><br>Amount of Claims = Approximately $10,975,174 | Y | Y<br><br>(Creditor in this class is deemed to have rejected the Plan) | Title Acquisition shall receive no payment on account of its claim under the Plan. |

### 4.    Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 5 | All Equity Interests in Debtor | N<br><br>(Interest Holders in this class are not entitled to vote on the Plan) | Building Lessee shall retain its 15% interest in the Debtor in exchange for contributing approximately $150,000 of the Supplemental Capital Contribution.<br><br>Title Acquisition shall retain its 85% interest in the Debtor in exchange for all of the Title Acquisition Contributions as described in Section II, C, 9 of the Disclosure Statement. |

## D.    Means of Effectuating the Plan

### 1.    Funding for the Plan

There are three sources of funding for the Plan, as follows:

(a)  Net Capital Contribution - Cash in the sum of approximately $1.3 million which will be contributed to the Debtor by Building Lessee from proceeds that it receives from the Tax Investor, which will be used to make the payments required under the Plan to Class 2 creditor on the Effective Date of the Plan, holders of allowed priority tax claims in full, and $1 million to Class 3 creditors (non-insider general unsecured creditors) to be shard on a pro rata basis.

9

(b)  <u>Supplemental Capital Contribution</u> - Cash in the sum of approximately $400,000 which will be contributed to the Debtor by Building Lessee from proceeds that it receives from the Tax Investor.  Of this amount, $150,000 shall be the "new value" contribution by Building Lessee to the Debtor to keeping its 15% interest in the Reorganized Debtor.  All Supplemental Capital Contribution shall be utilized by the Reorganized Debtor for working capital purposes or to fund payments required to be made to the Class 1 creditor (interest payments for the Bank's Secured Claim).

(c)  <u>Title Acquisition Contributions</u> – Cash in the sum of approximately $200,000 will be contributed to the Debtor by Title Acquisition, which will be used to make the payments required to be made to the estate's professionals for allowed fees and expenses.  Additional cash in the sum of approximately $85,000 will be contributed to the Debtor by Title Acquisition, which will be used to make the payment required to be made to LA County.  Title Acquisition will also make up to $1 million in contributions necessary for timely remittance of all payments required to be made to the Class 1 creditor (Bank) to the extent the cash flow of the Property does not support such payments which is expected to be approximately $600,000.  Title Acquisition has also already contributed approximately $60,000 to pay for the Debtor's insurance and fund operating shortfalls with respect to the Property.

**2.    Tax Credit Agreements**

As set forth in the Disclosure Statement, Tax Investor will make the Capital Contribution and Supplemental Capital Contribution available to Building Lessee upon confirmation of the Plan and execution of amended agreements relating to the Tax Credits reflecting changes that are necessary to conform the terms of such agreements to the terms of this Plan (collectively, the

PRINTED ON

RECYCLED PAPER

"Amended Tax Credit Agreements") and containing such other terms as the Tax Investor may reasonably request, including, without limitation:

    1)    an amended Master Lease Agreement which shall provide for the following:

        a.  the "Rent" due under the amended Master Lease Agreement shall be equal to the cash flow of the Property for the period from the Effective Date of the Plan through the expiration of the recapture period in February 2014; and

        b.  the Debtor, as landlord under the amended Master Lease Agreement, shall not have any rights to terminate the amended Master Lease Agreement for failure to pay "Rent" when due during the Tax Credit recapture period, which expires in February 2014; and

    2)    an amended Operating Agreement relating to Debtor; and

    3)    an amended Operating Agreement relating to Building Lessee; and

    4)    an agreement to be executed by Capri Select Income II and Title Guarantee Acquisition, LLC reaffirming the existing guarantees relating to the Tax Credits or the Property, in form and substance acceptable to Tax Investor, Capri Select Income II and Title Guarantee Acquisition, LLC; and

    5)    an agreement executed by Title Guarantee Acquisition, LLC and Capri re-affirming the Option Agreement; and

    6)    such other agreements re-affirming existing obligations as may reasonably be requested by Tax Investor.

The terms of the agreements described above shall be agreed upon prior to confirmation and shall be executed prior to the Effective Date.

11

### 3.    Post-Confirmation Management

The post-confirmation management of the Reorganized Debtor shall remain the same as the Debtor's pre-confirmation management.  Title Acquisition shall continue to serve as the Manager of the Reorganized Debtor following confirmation of the Plan.

### 4.    Disbursing Agent

Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB") shall act as the Disbursing Agent for purposes of making all distributions provided for under the Plan.  LNBRB shall open a segregated interest-bearing account for purposes of maintaining estate funds, with interest to accrue for the benefit of the estate.  The Disbursing Agent shall serve without bond.

### 5.    Objections to Claims

Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims. Objections to claims shall be filed not later than 60 days after the date of entry of Order confirming the Plan.  As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to claims following the confirmation of the Plan.

Nothing contained in the Plan shall constitute a waiver or release by the Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim.  The Disbursing Agent will withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

/ / /

12

### 6.    Interest Pending Allowance of Claims

Except as specifically provided for in the Plan, in the order confirming the Plan, or in some other order of the Court, interest shall not accrue on claims and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtor or any other party in interest objects to the allowance of any claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as expressly stated in the treatment pursuant to the Plan.

### 7.    Distributions to be Made Pursuant to the Plan

Distributions to be made by the Reorganized Debtor on the Effective Date on account of any claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Disbursing Agent under the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.

Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

Checks issued by the Reorganized Debtor or the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of 120 days

PRINTED ON
RECYCLED PAPER

from the date of issuance of such check.  After such date, the claim shall be deemed disallowed and the monies otherwise payable on account of such claim shall revest in the Reorganized Debtor free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 8.    Exculpations and Releases

To the maximum extent permitted by law, none of the Debtor, the estate, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, an "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein.  Each Released Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

### 9.    Injunctions

The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

14

PRINTED ON

RECYCLED PAPER

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an allowed claim or allowed interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

**E.    Risk Factors**

There is little foreseeable risk of default for payments required to be made under the Plan.

The Debtor contends that Tax Investor is required under the Building Lessee Operating Agreement to contribute the Capital Contribution (i.e., $1,712,535).  Upon confirmation of the Plan, Tax Investor will fund the Capital Contribution and upon receipt of a certification from an accountant satisfactory to the Tax Investor that the remaining Tax Credits are available based on the final construction costs of the project, Tax Investor also will fund the Supplemental Capital Contribution (i.e., approximately $400,000) to Building Lessee.  The accountant for Building

15

Lessee is working on such certificate, and the Debtor is extremely confident that the necessary certification will be obtained to ensure that the Estate Funds are released by Tax Investor upon confirmation of the Plan.  Building Lessee, in turn, will pay the Capital Contribution and the Supplemental Capital Contribution to the Debtor.  The Tax Investor has the cash to fund these contributions in full upon confirmation of the Plan.

Title Acquisition will fund the sum of $200,000 at least 2 business days prior to the Confirmation Hearing, which is expected to be sufficient to pay all allowed professional fees and expenses of the estate.  Title Acquisition also has the cash to fund the payment due to LA County, and up to $1 million in any shortfalls (estimated to be approximately $600,000) experienced from the cash flow of the Property to meet the payments required to be made under the Plan to the Bank.  Title Acquisition is wholly owned by Capri, which is a financially sound fund managed by Capri Capital Partners ("Capri Capital").  Under the Plan, Title Acquisition will contribute the funds necessary to address any shortfalls so as to avoid default by the Reorganized Debtor of its payment obligations to the Bank under the Plan.  As set forth above, Capri is a private real estate investment company formed in 2004 to acquire, originate and manage a portfolio of commercial real estate and real estate-related assets.  Capri was originally capitalized with $312.5 million in contributed capital from institutional investors.  The investors include primarily pension funds, which provide retirement income for elderly, hard working, retired public employees, such as teachers, police and firemen, but do not include investment vehicles such as hedge funds or "fund of funds" type structures.  As of March 31, 2009, Capri reported on its unaudited Consolidated Balance Sheet total assets of approximately $542.9 million and net assets (less liabilities) of approximately $166.5 million.  The manager of Capri is Capri Capital, a privately held, SEC-registered real estate investment advisory firm

PRINTED ON

RECYCLED PAPER

headquartered in Chicago, Illinois. Capri Capital (and/or its predecessor entities) date back to 1992. Capri Capital is an experienced investor in commercial real estate equity and debt markets and represents some of the largest pension funds and other institutional investors in the United States. As of March 31, 2009, Capri Capital had approximately $4.2 billion in real estate assets under management, diversified by geography and product type (with a high concentration and focus in the multi-family residential product). Therefore, there is no doubt that Title Acquisition will have sufficient financial wherewithal to make the necessary payments under the Plan.

**F.      Other Provisions of the Plan**

**1.      Executory Contracts and Unexpired Leases**

**a)      Assumptions**

The Debtor is not a party to any executory contract. The only unexpired lease to which the Debtor is a party is the Master Lease Agreement with Building Lessee. On the Effective Date, Reorganized Debtor will assume the Master Lease Agreement with Building Lessee, subject to the amendments which the Debtor has agreed to as described in the Disclosure Statement. The Confirmation Order, subject to the occurrence of the Effective Date, will constitute a Court order approving the assumption, on the Effective Date, of the Master Lease Agreement, as amended.

**b)      Rejections**

Other than the Master Lease Agreement between the Debtor and Building Lessee, the Debtor is not aware of any executory contract or unexpired lease to which it is a party. If any such contract or lease exists, they shall be deemed rejected. The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an Order approving the Debtor's rejection of all such executory contracts and unexpired leases.

PRINTED ON

RECYCLED PAPER

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**2.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**3.    Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.    To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b.    To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c.    To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate.

d.    To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all

PRINTED ON
RECYCLED PAPER

matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto;

e.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

f.      To determine any request for payment of administrative expenses;

g.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date;

h.      To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

i.      To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

j.      Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

k.      To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

l.      To enter a final decree closing this Case.

19

PRINTED ON

RECYCLED PAPER

### G.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY ARE URGED TO CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible federal income tax consequences is informational only and is intended solely for the purpose of alerting readers about possible, but not all, tax issues this Plan may present to the holder of a claim.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code, as well as Treasury Regulations, judicial and administrative authorities or interpretations, embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.  No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan.  No rulings or determinations of the Internal Revenue Service ("IRS") have been requested.  No representations are being made regarding the particular tax consequences of the Plan.

The tax consequences of the Plan to a holder of a claim will depend, in part, on the type of consideration received for the claim, whether the holder is a resident of the United States for tax purposes, whether the holder has taken a bad debt deduction with respect to the claim (or a portion thereof), and whether the holder reports income on the accrual or cash basis method. Holders of claims likely will recognize gain or loss, as the case may be, equal to the difference between the amount realized under the Plan in respect of their claims and their respective adjusted tax basis in their claims.  The amount realized for this purpose generally will equal the sum of cash and the fair market value of any other consideration received under the Plan in

PRINTED ON
RECYCLED PAPER

respect of their claims.  Any gain or loss recognized in the exchange will be capital or ordinary depending on the status of the claim in the holder's hands.

THE ABOVE DISCUSSION IS INTENDED AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN, IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE.  THE TAX CONSEQUENCES OF THE PLAN ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON THE INDIVIDUAL CIRCUMSTANCES OF THE HOLDERS OF CLAIMS AND INTERESTS.  *ACCORDINGLY, HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL, AND, IF APPLICABLE, FOREIGN TAX CONSEQUENCES OF THE PLAN.*

## III.

### EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

Subject to the provision below, confirmation shall bind the Debtor, all creditors, and other parties in interest to the provisions of the Plan whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

Except as otherwise provided herein or in the Confirmation Order, on the Effective Date, to the extent applicable, the Debtor will be discharged from any debt that arose before confirmation of the Plan, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code whether or not a proof of claim based on such debt was filed or deemed filed under Section 501 of the Bankruptcy Code, such claim was allowed under Section 502 of the Bankruptcy Code or the holder of such claim accepted the Plan.

21

Subject to the provision below, nothing contained herein shall limit the effect of confirmation as described in Sections 524 and/or 1141 of the Bankruptcy Code, and on the Effective Date, the Debtor shall be deemed discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code.

Subject to the provision below, on or after the Effective Date, all parties that have held, currently hold, or may hold a claim discharged pursuant to the terms of the Plan shall be permanently enjoined by Section 524 of the Bankruptcy Code from taking any of the following actions on account of any such discharged claim:  (a) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Reorganized Debtor, provided, however, that the foregoing injunction shall not apply to bar any claim of recoupment or setoff, (c) creating, perfecting, or enforcing any lien or encumbrance against the Reorganized Debtor, and (d) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or Confirmation Order.  Any person violating such injunction may be liable for actual damage, including costs and attorneys' fees and, in appropriate circumstances, punitive damages.

**B.     Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere herein, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor.  In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the estate shall be revested in the Reorganized Debtor.  Following the Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Court.  Following the Effective Date, the Reorganized Debtor shall have the

PRINTED ON
RECYCLED PAPER

authority to employ such professionals as he deems necessary to prosecute or defend such claims asserted without the need for Court approval.

**C.    Default**

Except as otherwise provided herein or in the Confirmation Order, in the event that the Reorganized Debtor or the Disbursing Agent shall default in the performance of any of its obligations under the Plan and shall not have cured such a default within thirty (30) days after receipt of written notice of default from the creditor to whom the performance is due, then the entity or individual to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one claim shall not be any event of default with respect to any other claim.

**D.    Modification of Plan**

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**E.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice after the Effective Date.  Further status reports shall be filed every 120 days and served on the same entities.

23

PRINTED ON

RECYCLED PAPER

**F.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Case under §
1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Court
orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had
been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will
revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property,
but only to the extent that the Court did not previously authorize relief from stay during the Case.

The order confirming the Plan may also be revoked under very limited circumstances.
The Court may revoke the order if the order of confirmation was procured by fraud and if the
party in interest brings an adversary proceeding to revoke confirmation within 180 days after the
entry of the order of confirmation.

**G.     Post-Confirmation U.S. Trustee Fees**

The Reorganized Debtor shall be responsible for timely payment of all fees incurred after
the Effective Date pursuant to 28 U.S.C. Section 1930(a)(6).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PRINTED ON

RECYCLED PAPER

**H.    Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

Debtor or other party as the Court shall designate in the order confirming the Plan, shall file a

motion with the Court to obtain a final decree to close the Case.

Dated: September 21, 2009                    TITLE GUARANTEE BUILDING OWNER, LLC,
                                             a Delaware limited liability company,


                                             By: _____
                                                 Guy A. Mason, Its Authorized
                                                 Representative



Presented By:

LEVENE, NEALE, BENDER, RANKIN
      & BRILL, L.L.P.


By: _____
    RON BENDER
    MONICA Y. KIM
    Attorneys for Chapter 11
    Debtor and Debtor in Possession

PRINTED ON

| In re:<br>TITLE GUARANTEE BUILDING OWNER, LLC,<br><div align="right">Debtor(s).</div> | CHAPTER  11<br><br>CASE NUMBER  2:09-bk-13950-BR |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

The foregoing document described **SECOND AMENDED DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 21, 2009**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

  * Ron Bender    rb@lnbrb.com
  * Courtney Chai    chaic@gtlaw.com
  * Russell Clementson    russell.clementson@usdoj.gov
  * Monica Y Kim    myk@lnbrb.com
  * Steven N Kurtz    lgreenstein@laklawyers.com, rfeldon@laklawyers.com
  * Elan S Levey    elevey@laklawyers.com, lgreenstein@laklawyers.com;rfeldon@laklawyers.com
  * Daniel J McCarthy    dmccarthy@hillfarrer.com
  * Hal M Mersel    mark.mersel@bryancave.com
  * Krikor J Meshefejian    kjm@lnbrb.com
  * Stephanie M Seidl    sseidl@sheppardmullin.com
  * Adam M Starr    starra@gtlaw.com
  * David A Tilem    davidtilem@tilemlaw.com,
malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com
  * United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
  * Richard Welsh    rwelsh@gtlaw.com
  * Katherine M Windler    katherine.windler@bryancave.com

<div align="right">☐  Service information continued on attached page</div>

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **September 21, 2009**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

<u>SERVED VIA U.S. MAIL</u>
Request for Special Notice
(see attached service list)

<div align="right">☒  Service information continued on attached page</div>

(PROOF OF SERVICE CONTINUED ON FOLLOWING PAGE)

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 21, 2009**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**VIA OVERNITEEXPRESS OVERNIGHT DELIVERY**
Hon. Barry Russell
United States Bankruptcy Court
Central District of California
Los Angeles Division
255 E. Temple Street, Suite 1668
Los Angeles, CA  90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 21, 2009 | Angela Antonio | /s/ Angela Antonio |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                      **F 9013-3.1**

In re Title Guarantee Building Owner, LLC
Case No. 2:08-bk-13950-BR
RSN

**SERVED VIA U.S. MAIL EXCEPT WHERE
INDICATED AS SERVED VIA NEF (*)**

TITLE GUARANTEE BUILDING OWNER,
LLC
c/o Capri Capital Partners, LLC
875 North Michigan Avenue, Suite 3430
Chicago, IL 60611

David A. Tilem, Esq. *
206 No. Jackson Street
Ste 201
Glendale, CA 91206-4330

U.S. Trustee *
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017
russell.clementson@usdoj.gov

Alan H. Martin, Esq.
Sheppard Mullin
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626
amartin@sheppardmullin.com

Counsel for Turelk, Inc.
Daniel J. McCarthy *
Hill, Farrer & Burrill LLP
Once California Plaza
300 South Grand Avenue, 37th Floor
Los Angeles, CA 90071
dmccarthv@hillfarrer.com

Counsel for Tri-State
Gregory L. Rippetoe/Laura Miles
Rippetoe Miles, LLP
2 Park Plaza, Suite 525
Irvine, CA 92614

Counsel for Kitson Specialty Contracting
Steven W. Weinshenk
Steven W. Weinshenk, APC
24005 Ventura Boulevard
Calabasas, CA 91302

RSN
LA County Treasurer and Tax Collector
P.O. Box 54110
Los Angeles, CA 90054