RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244

Attorneys for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| In re: | ) | Chapter 11 |
|---|---|---|
| TITLE GUARANTEE BUILDING OWNER, LLC | ) ) ) | Case No.  2:09-bk-13950-BR |
| Debtor. | ) ) ) ) ) ) ) ) ) | **NOTICE OF MOTION AND MOTION OF DEBTOR TO APPROVE DISMISSAL OF DEBTOR'S CHAPTER 11 BANKRUPTCY CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GUY MASON IN SUPPORT THEREOF** |
| | ) ) ) ) ) | <u>Hearing</u>:<br>Date:  June 8, 2010<br>Time:  2:00 p.m.<br>Place:  Courtroom "1668"<br>          255 East Temple St.<br>          Los Angeles, CA |

**PLEASE TAKE NOTICE THAT** a hearing will be held on June 8, 2010 at 2:00 p.m. before the Honorable Barry Russell, United States Bankruptcy Judge, in his Courtroom 1668, located at 255 East Temple St., Los Angeles, CA, to consider the motion (the "Motion") filed by Title Guarantee Building Owner, LLC, the debtor and debtor in possession in the above-referenced Chapter 11 bankruptcy case (the "Debtor"), for an order approving the dismissal of the Debtor's Chapter 11 bankruptcy case. The Debtor submits that "cause" exists for the Court to approve a dismissal of the Debtor's Chapter 11 bankruptcy case, and that this result is in the overwhelming best interests of this estate.

This is a single asset real estate case. The Debtor filed this case on February 23, 2009 on an emergency basis to avoid a foreclosure sale of its real property by Bank of America (the "Bank"), the holder of a deed of trust against the property. Shortly after the case was filed, the Bank filed its relief from stay motion seeking a termination of the automatic stay to allow for the Bank to proceed with a foreclosure of the property. The Debtor also filed its plan of reorganization and related disclosure statement. During a status conference held in the case, the Court indicated that it would "trail" both the relief from stay motion and the confirmation process, such that, (1) in the event the Court did not approve the disclosure statement, the Court would grant the relief from stay motion, (2) if the disclosure statement was approved but confirmation of the reorganization plan was denied, the Court would grant the relief from stay motion, and (3) if disclosure statement was approved and the reorganization plan confirmed, then the motion for relief from stay would be denied.

The Bank indicated that it would not support the proposed treatment of its secured claim under the Debtor's reorganization plan. The Bank also argued that the proposed reorganization plan was patently unconfirmable on a variety of grounds, including alleged violation of the absolute priority rule. As a result, the Bank objected to approval of the disclosure statement.

At the disclosure statement hearing held on October 27, 2009, the Court found that the interest rate proposed to be paid under the reorganization plan to the Bank on its secured claim was not reflective of "market" terms.  While the Debtor indicated that it was prepared to increase the rate, the Court found that the increased rate was also not reflective of "market" terms.  As a result, the Court determined that the Debtor's reorganization plan was not confirmable, and denied approval of the Debtor's disclosure statement.  The Court also granted the Bank's relief from stay motion.

The Bank has recently completed its foreclosure of the Property, which is the single asset of this estate.  There are no other assets in this estate.  As a result, the Debtor has no chance or opportunity to rehabilitate.  There are no pending adversary proceedings, claim objections or any unresolved motion in this case.  Additionally, given that there are no remaining assets of this estate, there is no benefit to converting this case to Chapter 7 because there would be nothing for a trustee to do and having a trustee would only add to the administrative costs of this case.  The Debtor has therefore concluded that dismissing its Chapter 11 bankruptcy case is the most efficient and cost effective manner of ending this bankruptcy case.

The Office of the United States Trustee ("OUST") indicates that unpaid quarterly dues of $975 ($325 for 4th quarter of 2009, $325 for 1st quarter of 2010, and $325 for the 2nd quarter of 2010) are outstanding.  The Debtor will either pay these dues on or prior to the date of the hearing on the Motion, or, in the alternative, the OUST has indicated that it will agree to the entry on an order dismissing this case so long as it receives a judgment for such fees.

The complete bases for the Motion are set forth in the annexed Memorandum of Points and Authorities and the Declaration of Guy Mason.  The Motion is based upon this Motion, the annexed Memorandum of Points and Authorities and the Declaration of Guy Mason, the

1  statements, arguments and representations of the parties to be made at the hearing on the

2  Motion, if any, and any other evidence properly presented to the Court.

3      **PLEASE TAKE FURTHER NOTICE** that any opposition to the Motion must be in

4  writing and filed with the Clerk of the Bankruptcy Court and served upon counsel for the Debtor

5
6  at the address set forth in the upper left-hand corner of the first page of this Motion not later

7  than 14 days after the service of this Motion.  The failure to timely file an objection and a

8  request for a hearing may be deemed by the Court to constitute consent to the relief requested in

9  the Motion.

10     **WHEREFORE,** the Debtor respectfully requests that the Court enter an order:

11     1.      approving the immediate dismissal of the Debtor's Chapter 11 bankruptcy case;

12  and

13     2.      granting such other and further relief as the Court deems just and proper under

14
15  the circumstances of this case.

16  Dated: May 14, 2010                          TITLE GUARANTEE BUILDING OWNER, LLC

17
                                        By:_____/s/ Monica Y. Kim_____
18                                             Monica Y. Kim
                                               LEVENE, NEALE, BENDER,
19                                             RANKIN & BRILL L.L.P.
                                               Attorneys for Chapter 11
20                                             Debtor and Debtor in
21                                             Possession

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By the Motion, the Debtor requests an immediate dismissal of the Debtor's Chapter 11 bankruptcy case. This is a single asset real estate case. Bank of America (the "Bank") holds a deed of trust against the property. However, on October 27, 2009, the Court granted the Bank's motion for relief from the automatic stay, and the Bank has recently completed its foreclosure of the property. There are no other assets remaining in this estate.

The Debtor firmly believes that the relief requested in this Motion is warranted and appropriate and in the overwhelming best interests of this estate. There are no pending adversary proceedings, claim objections or any other unresolved motions. Because no assets remain, this case should not be converted to Chapter 7 given that there would be nothing for a trustee to do and having a trustee would only add to the administrative costs of this case. The Debtor has therefore concluded that dismissing its Chapter 11 bankruptcy case is the most efficient and cost effective manner of ending this bankruptcy case.

The Office of the United States Trustee ("OUST") indicates that unpaid quarterly dues of $975 ($325 for 4th quarter of 2009, $325 for 1st quarter of 2010, and $325 for the 2nd quarter of 2010) are outstanding. The Debtor will either pay these dues on or prior to the date of the hearing on the Motion, or, in the alternative, the OUST has indicated that it will agree to the entry on an order dismissing this case so long as it receives a judgment for such fees.

## II.

## **FACTS OF THE CASE**

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 23, 2009 (the "Petition Date").  The Debtor has been managing its affairs and its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor was the fee owner of real property located at 411 West Fifth Street, Los Angeles, CA ("Property") which consists of 74 units of residential apartments.

Between 2005 and 2008, the Property (originally used for commercial use) was rehabilitated for residential use and converted to luxury housing units.  The original owner and developer in charge of the conversion project was an individual by the name of Daniel Swartz ("Swartz").  In order to achieve the rehabilitation, construction and development of the Property, the Debtor(through Swartz) obtained loans from the Bank.  The loans were secured by a first priority deed of trust against the Property, recorded with the Los Angeles County Recorders Office on October 14, 2005.  As of the Petition Date, the Bank claims that it was owed the aggregate sum of approximately $25 million.

At around the same time, and in addition to the secured loans from the Bank, the Debtor obtained a mezzanine loan from Capri Select Income II ("Capri"), which was secured by, among other things, a deed of trust against the Property subordinate to the lien of the Bank, and other property.  Like the Bank loans, the proceeds of the mezzanine financing were used by the Debtor for the rehabilitation, construction and development of the Property.  The original amount of the mezzanine loan to the Debtor was $5.8 million, and the loan was subsequently increased to $7.55 million in July 2007.  As of the Petition Date, Title Acquisition (as the

assignee to Capri of the mezzanine loans made to the Debtor) was owed the aggregate sum of $10,975.173.78.

Pre-petition, the Debtor defaulted on its obligations to the Bank and Capri. In July 2008, the Bank sent a notice of default letter notifying the Debtor of the alleged defaults under its loan agreement with the Bank, and demanding full and immediate payment of the amounts due thereunder. When the demands were not met, the Bank attempted to foreclose upon the Property, with a foreclosure sale originally scheduled for December 1, 2008. Contemporaneously with the Bank's efforts to exercise its rights and remedies against the Debtor and the Property, Capri was also exercising its rights and remedies vis a vis certain of its collateral, namely, the interests in the Debtor and its affiliate held by Swartz and his partner. Given these events, the Bank and Capri engaged in discussions with regard to a possible restructure of the Debtor's loan obligations to the Bank, and as part of these discussions, the Bank agreed to postpone the foreclosure sale from December 1, 2008 to February 24, 2009. On December 30, 2008, and through its wholly-owned subsidiary known as Title Guarantee Acquisition, LLC ("Title Acquisition"), Capri successfully foreclosed upon Swartz's partner's 85% interest in the Debtor, and Swartz's 100% interest in an affiliate of the Debtor - as a result of the foreclosure pursuant to applicable provisions of the Uniform Commercial Code, Title Acquisition became the controlling equity holder of the Debtor.

Unfortunately, by February 23, 2009, the Bank and Capri had not yet reached terms with regard to a restructure of the Bank's loans to the Debtor, and the Bank was not willing to further postpone the foreclosure sale of the Property. As a result, the Debtor commenced this Chapter 11 case on an extreme emergency basis on February 23, 2009 to prevent a foreclosure of the Property by the Bank.

After Chapter 11, the Debtor promptly filed its reorganization plan and related disclosure

statement.  The Bank indicated that it was opposed to the proposed treatment of its secured claim under the Debtor's reorganization plan.  The Bank also took the position that the proposed reorganization plan was patently unconfirmable on a variety of grounds, including alleged violation of the absolute priority rule.

The Bank also filed a motion for relief from stay.  While the parties attempted to have further discussions regarding mutually acceptable parameters of the treatment of the Bank's secured claim under the Debtor's reorganization plan, no agreement was ever reached.

During a status conference held in the case, the Court indicated that it would "trail" both the relief from stay motion and the confirmation process, such that, (1) in the event the Court did not approve the disclosure statement, the Court would grant the relief from stay motion, (2) if the disclosure statement was approved but confirmation of the reorganization plan was denied, the Court would grant the relief from stay motion, and (3) if disclosure statement was approved and the reorganization plan confirmed, then the motion for relief from stay would be denied.

The Bank filed an objection to the Debtor's disclosure statement.  At the disclosure statement hearing held on October 27, 2009, the Court found that the interest rate proposed to be paid under the reorganization plan to the Bank on its secured claim was not reflective of "market" terms.  While the Debtor indicated that it was prepared to increase the rate, the Court found that the increased rate was also not reflective of "market" terms.  As a result, the Court determined that the Debtor's reorganization plan was not confirmable, and denied approval of the Debtor's disclosure statement.  The Court also granted the Bank's relief from stay motion.

The Bank has completed its foreclosure of the Property, which is the single asset of this estate.  There are no other assets in this estate.  As a result, the Debtor has no chance or opportunity to rehabilitate.  There are no pending adversary proceedings, claim objections or any unresolved motion in this case.  Additionally, given that there are no remaining assets of

8

1   this estate, there is no benefit to converting this case to Chapter 7 because there would be

2   nothing for a trustee to do and having a trustee would only add to the administrative costs of this

3   case.  The Debtor has therefore concluded that dismissing its Chapter 11 bankruptcy case is the

4   most efficient and cost effective manner of ending this bankruptcy case.

5
                                                    **III.**
6

7   **THE COURT SHOULD APPROVE THE DISMISSAL OF THE DEBTOR'S CHAPTER**

8                                               **11 CASE**

9       Section 1112(b) of the Bankruptcy Code provides in relevant part as follows:

10              [O]n request of a party in interest, and after notice and a hearing, .
                . . the court shall convert a case under this chapter to a case under
11              chapter 7 or dismiss a case under this chapter, whichever is in the
                best interests of creditors and the estate, if the movant establishes
12              cause.

13   11 U.S.C. § 1112(b).  Section 1112(b) of the Bankruptcy Code contains 16 examples of what

14   constitutes "cause."    Notably, the 16 examples of "cause" for dismissal set forth in the

15   Bankruptcy Code generally relate to bad acts by a debtor.  This is not surprising because

16   dismissal is usually seen as the ultimate penalty when a debtor fails to proceed as required by the

17   Bankruptcy Code and Bankruptcy Rules.  See In re Kimble, 96 B.R. 305, 307 (Bankr. D. Mont.

18
     1988).  The foregoing examples of cause for dismissal are not exclusive and "'[a] court may
19
     consider other factors as they arise and may 'use its equitable powers to reach an appropriate
20
     result in individual cases.'"  In re Mechanical Maintenance, Inc., 128 B.R. 382, 386 (E.D. Pa.
21
     1991) (quoting S.Rep No. 989, 95th Cong., 2d Sess. 117, reprinted in 1978 U.S. Code Cong. &
22
23   Admin. News 5787, 5903); see also 11 U.S.C. § 102(3).

24
         Once it is determined that "cause" exists, the Court must determine whether to convert or
25
26   dismiss the case based on what is in the best interests of creditors and the estate.  In re Staff

27   Investment Co., 146 B.R. 256, 260 (Bankr. E.D. Cal. 1993); In re Evans, 2002 WL 33939733, 1

28   (Bankr. D. Idaho 2002).  This determination is committed to the Court's wide discretion. Pioneer

9

1  <u>Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities)</u>, 248

2  B.R. 368, 375 (9th Cir. BAP 2000); <u>Kimble</u>, 96 B.R. at 307.  A "[d]ebtor's request [to dismiss its

3  Chapter 11 bankruptcy case] should ordinarily be granted unless some 'plain legal prejudice'

4  will result to the creditors.'" <u>Kimble</u>, 96 B.R. at 907 (<u>quoting</u> <u>In re Geller</u>, 74 B.R. 685, 688-89

5
6  (Bankr. E.D. Pa. 1987, <u>citing</u> <u>In re Hall</u>, 15 B.R. 913, 915-16 (9th Cir. BAP 1981; <u>In re</u>

7  <u>International Airport Inn Partnership</u>, 517 F.2d 510, 512 (9th Cir. 1975)).

8        It is not possible for the Debtor to reorganize given that it has no assets remaining.

9  Additionally, with no assets, a conversion to Chapter 7 would be inefficient and burden the

10  estate with additional administrative expenses.  The Debtor strongly believes that the <u>only</u>

11  sensible option facing this estate is a prompt dismissal of this case.  No conceivable benefit

12  could be obtained from a conversion of this case to Chapter 7 as there is nothing left to

13  administer or from keeping this case in Chapter 11.  The Debtor therefore believes that the

14  dismissal sought by the Debtor is the correct result for ending this case.

15

16                                            **IV.**

17                                       <u>**CONCLUSION**</u>

18        The Debtors submit that "cause" exists for the Court to grant the relief requested by the

19  Debtor and that doing so is in the overwhelming best interests of the estate.  The Debtor submit

20  that none of its creditors will be prejudiced by the requested dismissal given, among things, that

21  they have all had an opportunity to file claims and object to this Motion. The Debtor therefore

22  respectfully request that the Court:

23

24        1.        approving the immediate dismissal of the Debtor's Chapter 11 bankruptcy case;

25  and

26  / / /

27  / / /

28

2.    granting such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated:  May  14, 2010                    TITLE GUARANTEE BUILDING OWNER, LLC

                                  By:___/s/ Monica Y. Kim_____
                                        Monica Y. Kim
                                        LEVENE, NEALE, BENDER,
                                        RANKIN & BRILL L.L.P.
                                        Attorneys for Chapter 11
                                        Debtor and Debtor in Possession

## <u>DECLARATION OF GUY A. MASON</u>

I, Guy A. Mason, hereby declare as follows:

1.     I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would testify competently with respect thereto.   Where facts are alleged upon information and belief, I believe them to be true and correct.

2.     I am Vice President, Investments of Capri Capital Partners, LLC, which is the manager of Capri Select Income II, LLC, the sole owner of Title Guarantee Acquisition, LLC, which, in turn, is the 85% owner of the Debtor.  I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

3.     The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 23, 2009 (the "Petition Date").  The Debtor has been managing its affairs and its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.     The Debtor was the fee owner of real property located at 411 West Fifth Street, Los Angeles, CA ("Property") which consists of 74 units of residential apartments.

5.     Between 2005 and 2008, the Property (originally used for commercial use) was rehabilitated for residential use and converted to luxury housing units.  The original owner and developer in charge of the conversion project was an individual by the name of Daniel Swartz ("Swartz").  In order to achieve the rehabilitation, construction and development of the Property, the Debtor(through Swartz) obtained loans from the Bank.  The loans were secured by a first priority deed of trust against the Property, recorded with the Los Angeles County Recorders Office on October 14, 2005.  As of the Petition Date, the Bank claims that it was owed the aggregate sum of approximately $25 million.

6.      At around the same time, and in addition to the secured loans from the Bank, the Debtor obtained a mezzanine loan from Capri Select Income II ("Capri"), which was secured by, among other things, a deed of trust against the Property subordinate to the lien of the Bank, and other property.  Like the Bank loans, the proceeds of the mezzanine financing were used by the Debtor for the rehabilitation, construction and development of the Property.  The original amount of the mezzanine loan to the Debtor was $5.8 million, and the loan was subsequently increased to $7.55 million in July 2007.  As of the Petition Date, Title Acquisition (as the assignee to Capri of the mezzanine loans made to the Debtor) was owed the aggregate sum of $10,975.173.78.

7.      Pre-petition, the Debtor defaulted on its obligations to the Bank and Capri.  In July 2008, the Bank sent a notice of default letter notifying the Debtor of the alleged defaults under its loan agreement with the Bank, and demanding full and immediate payment of the amounts due thereunder.  When the demands were not met, the Bank attempted to foreclose upon the Property, with a foreclosure sale originally scheduled for December 1, 2008.  Contemporaneously with the Bank's efforts to exercise its rights and remedies against the Debtor and the Property, Capri was also exercising its rights and remedies vis a vis certain of its collateral, namely, the interests in the Debtor and its affiliate held by Swartz and his partner.  Given these events, the Bank and Capri engaged in discussions with regard to a possible restructure of the Debtor's loan obligations to the Bank, and as part of these discussions, the Bank agreed to postpone the foreclosure sale from December 1, 2008 to February 24, 2009.  On December 30, 2008, and through its wholly-owned subsidiary known as Title Guarantee Acquisition, LLC ("Title Acquisition"), Capri successfully foreclosed upon Swartz's partner's 85% interest in the Debtor, and Swartz's 100% interest in an affiliate of the Debtor - as a result of the foreclosure pursuant to applicable provisions of the Uniform Commercial Code, Title

Acquisition became the controlling equity holder of the Debtor.

8.    Unfortunately, by February 23, 2009, the Bank and Capri had not yet reached terms with regard to a restructure of the Bank's loans to the Debtor, and the Bank was not willing to further postpone the foreclosure sale of the Property.   As a result, the Debtor commenced this Chapter 11 case on an extreme emergency basis on February 23, 2009 to prevent a foreclosure of the Property by the Bank.

9.    After Chapter 11, the Debtor promptly filed its reorganization plan and related disclosure statement.  The Bank indicated that it was opposed to the proposed treatment of its secured claim under the Debtor's reorganization plan.  The Bank also took the position that the proposed reorganization plan was patently unconfirmable on a variety of grounds, including alleged violation of the absolute priority rule.

10.    The Bank also filed a motion for relief from stay.  While the parties attempted to have further discussions regarding mutually acceptable parameters of the treatment of the Bank's secured claim under the Debtor's reorganization plan, no agreement was ever reached.

11.    During a status conference held in the case, the Court indicated that it would "trail" both the relief from stay motion and the confirmation process, such that, (1) in the event the Court did not approve the disclosure statement, the Court would grant the relief from stay motion, (2) if the disclosure statement was approved but confirmation of the reorganization plan was denied, the Court would grant the relief from stay motion, and (3) if disclosure statement was approved and the reorganization plan confirmed, then the motion for relief from stay would be denied.

12.    The Bank filed an objection to the Debtor's disclosure statement.   At the disclosure statement hearing held on October 27, 2009, the Court found that the interest rate proposed to be paid under the reorganization plan to the Bank on its secured claim was not

14

reflective of "market" terms.  While the Debtor indicated that it was prepared to increase the rate, the Court found that the increased rate was also not reflective of "market" terms.  As a result, the Court determined that the Debtor's reorganization plan was not confirmable, and denied approval of the Debtor's disclosure statement.  The Court also granted the Bank's relief from stay motion.

13.    The Bank has completed its foreclosure of the Property, which is the single asset of this estate.  There are no other assets in this estate.  As a result, the Debtor has no chance or opportunity to rehabilitate.  There are no pending adversary proceedings, claim objections or any unresolved motion in this case.  Additionally, given that there are no remaining assets of this estate, there is no benefit to converting this case to Chapter 7 because there would be nothing for a trustee to do and having a trustee would only add to the administrative costs of this case. The Debtor has therefore concluded that dismissing its Chapter 11 bankruptcy case is the most efficient and cost effective manner of ending this bankruptcy case.

I declare that the foregoing is true and correct under penalty of perjury.

Executed this *14th* day of May 2010 at Chicago, Illinois.

_____
GUY MASON

| In re:<br>TITLE GUARANTEE BUILDING OWNER, LLC,<br><br>                                    Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-13950-BR |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067

A true and correct copy of the document described as: **NOTICE OF MOTION AND MOTION OF DEBTOR TO APPROVE DISMISSAL OF DEBTOR'S CHAPTER 11 BANKRUPTCY CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GUY MASON IN SUPPORT THEREOF** be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 14, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

  * Ron Bender     rb@lnbrb.com
  * Courtney Chai     chaic@gtlaw.com
  * Russell Clementson     russell.clementson@usdoj.gov
  * Monica Y Kim     myk@lnbrb.com
  * Steven N Kurtz     lgreenstein@laklawyers.com, rfeldon@laklawyers.com
  * Elan S Levey     elevey@laklawyers.com, lgreenstein@laklawyers.com;rfeldon@laklawyers.com
  * Daniel J McCarthy     dmccarthy@hillfarrer.com
  * Hal M Mersel     mark.mersel@bryancave.com
  * Krikor J Meshefejian     kjm@lnbrb.com
  * Thomas R Mulally     tom@ssmlaw.com
  * Stephanie M Seidl     sseidl@sheppardmullin.com
  * Adam M Starr     starra@gtlaw.com
  * David A Tilem     davidtilem@tilemlaw.com,
malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com;ldiaz@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
  * United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
  * Richard Welsh     rwelsh@gtlaw.com
  * Katherine M Windler     katherine.windler@bryancave.com

☐ Service information continued on attached page

**II.  <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>**(indicate method for each person or entity served)**:**
On **May 14, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

**<u>VIA U.S. MAIL</u>**
Office of the U.S. Trustee (VIA NEF)
Requests for Special Notice
(see attached service list)

☒ Service information continued on attached page

(PROOF OF SERVICE CONTINUED ON FOLLOWING PAGE)

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re:<br>TITLE GUARANTEE BUILDING OWNER, LLC,<br><br>                                                 Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-13950-BR |
|---|---|

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 14, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**VIA ATTORNEY MESSENGER DELIVERY**
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Ctrm 1668
Los Angeles, CA  90012          ☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 14, 2010 | Angela Antonio | /s/ Angela Antonio |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

In re Title Guarantee Building Owner, LLC
Case No. 2:08-bk-13950-BR
RSN

**SERVED VIA U.S. MAIL EXCEPT WHERE
INDICATED AS SERVED VIA NEF (*)**

TITLE GUARANTEE BUILDING OWNER,
LLC
c/o Capri Capital Partners, LLC
875 North Michigan Avenue, Suite 3430
Chicago, IL 60611

David A. Tilem, Esq. *
206 No. Jackson Street
Ste 201
Glendale, CA 91206-4330

U.S. Trustee *
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017
russell.clementson@usdoj.gov

Counsel for Turelk, Inc.
Daniel J. McCarthy *
Hill, Farrer & Burrill LLP
Once California Plaza
300 South Grand Avenue, 37th Floor
Los Angeles, CA 90071
dmccarthy@hillfarrer.com

Counsel for Tri-State
Gregory L. Rippetoe/Laura Miles
Rippetoe Miles, LLP
2 Park Plaza, Suite 525
Irvine, CA 92614

VIA EMAIL
Alan H. Martin, Esq.
Sheppard Mullin
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626
amartin@sheppardmullin.com

Counsel for Kitson Specialty Contracting
Steven W. Weinshenk
Steven W. Weinshenk, APC
24005 Ventura Boulevard
Calabasas, CA 91302

RSN
LA County Treasurer and Tax Collector
P.O. Box 54110
Los Angeles, CA 90054